The next case will be 067313, Andino v. the Secretary of Veterans Affairs. Good morning. May it please the Court. Andrew Wiedemeyer for Appellant Ms. Brandino. And we have at the table also for Ms. Brandino is Glenn Burr. The Veterans Court erred in this case by misinterpreting Section 3.105D in two ways. First, misinterpreted it as permitting a change in diagnosis to be the basis for a severance action, notwithstanding the regulations clear prerequisite requirement of it being met, notwithstanding the requirement had not been met that a medical professional had certified that the diagnosis on which service connection is predicated was clearly erroneous. The Veterans Court did not find, nor does the Secretary allege, that there is such a medical opinion in the record that did find the original diagnosis clearly erroneous. The Veterans Court instead misinterpreted the regulation as permitting severance when the adjudicator, or in this case the Veterans Court judge himself, determines that the pertinent medical record in the case is, quote-unquote, the equivalent of a medical finding that the original diagnosis was clearly erroneous. The Veterans Court went so far as to say that it was of no consequence that the doctor, whose opinion is the basis for the severance action in this case, did not say that the original diagnosis was clearly erroneous. This interpretation is contrary to the plain language of the regulation, which, as I noted, expressly conditions severance action in change-of-diagnosis cases on a medical finding that the diagnosis on which service connection was predicated is clearly erroneous. You want doctors to use legal language? Is that what you're saying? Not at all, Your Honor. This regulation does not impose any burdens, limits, or responsibilities on language physicians may use.  He says it was in error. What more do you want? From the doctor, we want nothing. The doctor may use whatever language he chooses. This regulation limits adjudicators and the actions adjudicators maintain based on medical evidence. Counsel, correct me if I'm wrong. The regulation now says clearly erroneous, right? But in 1961 it was amended. It used to say not correct. That's correct, Your Honor. So my interpretation of that would be in error is like not correct, but not necessarily like clearly erroneous. The clearly erroneous was inputted into the regulation to require a higher standard because veterans who have been awarded service ought not to have it removed lightly just because someone else might disagree. I mean, is that your interpretation of the regulatory change as well? Am I getting the history right on that reg? You are, Your Honor. Prior to 1961, the pertinent language was that the certification did only have to be that the original diagnosis was not correct. The secretary, without unfortunately substantive comment in federal register when the amendment was made, changed that language to clearly erroneous. It's our view that the terms not correct and in error are synonymous and that by eliminating the not correct requirement and replacing it with a substantially higher burden of clear error, that to interpret the current language, the veterans court essentially interpreted the current language to read what the language that it superseded said, and that counsels against the veterans court's reasoning in this case. This happened in 1975. Why don't we hear about it until nearly 30 years later? What happened in that 30 years? Well, the predominant reason, Your Honor, is Congress did not provide veterans judicial review until 1988. So once the board decided this case in 1975, Mr. Andino had no appellate remedy. With respect to the timing of the matter that's before this court now, I don't have a fact-based answer for that. However, there is no time limit, statutory or regulatory time limit, for a veteran to assert that a final action is clearly or mistakenly erroneous. Counsel, if we agree with you that the regulation as written currently with a clearly erroneous standard required that the doctor didn't, it wasn't enough for him just to disagree, and if we all agree that the facts are the facts, that the doctor said in error, and that would be equivalent of not correct, but not meet the burden of clearly erroneous, can we reverse or are we limited to vacating and remanding given our jurisdiction on review of veterans' cases? That would depend on a legal question that the veterans court has reached, but I don't believe this court has. The veterans court has held that when service connection is severed without strict compliance with 3.105D, that is error as a matter of law. And you can find that in the Stallworth case, 20 vet app at 488, citing Graves v. Brown, 6 vet app at 170. So if this court were to agree with those holdings of the veterans court that severance without strict compliance with the regulation is error as a matter of law, then this court would be empowered to reverse because that would be a legal finding by this court, and the only basis for severance, the only basis for the veterans court's rejection of the law, at least in the four corners of their opinion on this argument, was that there was no need for the plain language of the regulation to be satisfied, that a layman's finding of equivalency was enough. It's also significant. I'll be honest with you. I don't know the Stallworth case, but I'm just a little concerned because our jurisdiction is so narrow in these cases that I'm a little nervous about the idea that we would be able to say as a matter of law since compliance didn't occur we can reverse because we're not allowed to apply law to facts or do any of that. We're only limited to statutory regulation, statutory interpretation, regulatory interpretation, constitutional issues. So can we really say as a matter of law you're entitled to win outright? I believe if the court were to adopt the veterans court's logic that I just cited, that the court, it would be at that point a purely legal matter. However, even if the court were to find that it was unable to reverse, then certainly the proper remedy would be to vacate the veterans court's opinion for them to properly apply the regulation as written rather than create its own separate scheme. It essentially rewrote the regulation. You'll find nothing in the reg permitting lay adjudicators to find that a doctor made the equivalent of the opinion that the regulation requires. And in addition to the improper shifting of the burden from the doctor to the adjudicator through such an interpretation, you also create the situation of arbitrariness in severance actions. This regulation only comes into play when the secretary wants to collaboratively challenge a final decision awarding benefits. He has laid out a procedure in this reg under which that can occur and set out the predicate need for a certification of clear error. If an adjudicator is allowed to decide what is or is not the equivalent of a clearly erroneous finding, then a veteran with the same set of facts could have this benefit severed by one adjudicator, whereas another adjudicator will say, oh, no, that's not the equivalent. I don't think it's equivalent. And a third adjudicator might then say, well, maybe it's not equivalent, but it's equivalent enough, so I'm going to go ahead and set it, where the secretary has laid out an express plan. So you do want the doctor to use legal language, and if he doesn't have a law degree, then we're going to have to do what? The doctor can use the language that he believes accurately communicates his view of the veteran's condition. He did. He said he thought it was an error. And then the adjudicator has a regulatory responsibility to apply this regulation as written, and when he sees that the doctor didn't say clearly erroneous, his function is mechanical. Also, in other words, you do want the doctor to have a lawyer standing there saying, no, you need to change that to clearly erroneous. You have to use legal language. The doctor has no stake in this. It's between the veteran and the adjudicator. The adjudicator's role in this reg is to simply mechanically look at the opinion, see if it contains what the regulation requires, and then either initiate a severance action if it says clear error, or not initiate a severance action if it doesn't. But a possible option, which would impose five minutes of burden on the adjudicator, would be to contact the doctor. Dr. Duran, in this case, for use as an example, when he only said in error, the adjudicator could have spent five minutes picking up the phone and saying, hey, Dr. Duran, the standard in this case is clearly erroneous. I need an opinion on that. Can you please provide it? Then the adjudicator puts the file back on the shelf and waits for Dr. Duran to respond, and then when he does, the adjudicator will either have his clear error finding or he'll have an opinion of no clear error, and then the regulation tells him how to proceed. And that really is the appropriate standard here, given that it's the secretary. I'm sorry, Your Honor? Would that really work? I mean, are you saying that should be part of the inquiry? Dr. Duran made his analysis or made his determination of the error 25 years ago. He may not even be around. This could be, as a general proposition, with the way the VA doctors come and go, this could be a very onerous, maybe impossible task. In this case, it would be, given the procedural posture. The example I just gave was envisioning situations where the adjudication is being considered in the first instance. Well, but your case is what we've got before us. That's correct. You appealed in 2003, something that happened in 1975. So we have a problem, don't we? What is the problem, Your Honor? I'm not sure. There's no one to ask. Oh, that's true. Do you mean clear error or error? And, of course, then you have to give the doctor a legal education as to what the distinction is, and he has to cross. Well, the legal education would be for the adjudicator to apply the regulation as it's written. The doctor has no interest in the veteran's retention of evidence. So this part you mentioned a minute ago about calling the doctor, that is not part of the inquiry. I should be clear. I was not suggesting that was something that could have been done in this particular case. Or should be done generally. In general, there would be no reason why the adjudicator could not do that. Adjudicators communicate with VA physicians all the time to obtain requests and obtain medical evidence. And in a claim with a posture different than ours, that would not be an onerous burden on the Secretary, while it would ensure the veteran's right to the process that this regulation has laid out. Why don't we hear from the government? Thank you, Your Honor. Mr. Kairath? Ms. Conrad, I'm sorry. Thank you, Your Honor. May it please the Court, both the Veterans Court and the Board of Veterans' Appeals properly concluded that there was no clear and unmistakable error in the Court's 1975 decision concerning Mr. Andino. It is important to note that neither this Court nor the Court of Veterans' Claims, nor the Court of Post-Veterans' Claims, was reviewing the propriety of the 1973 severance decision. Both were reviewing the... Well, the Veterans Court was reviewing the 2003 board decision, and the Veterans Court found that the 2003 board decision finding no cue in the 1975 board decision was not arbitrary, capricious, or an abuse of discretion. The Veterans Court did not misinterpret 38 CFR Section 3.105D. The VA has never interpreted that section to elevate form over substance and to require, as Mr. Andino requests, physicians to use the magic words clearly erroneous. Counsel, I agree with you that the magic words is bad, and he was digging himself a hole there, which I'm going to try and help him get out of right now. So magic words not required, but nonetheless, I agree with you. There are lots of times when cases come up and I just say, boy, that's wrong, and it seems like that's what Dr. Duran said here. But a lot of times I don't get to choose between right and wrong because I'm bound by a more deferential standard of review. Well, the same thing applies here, clearly erroneous. The regulation was changed. It used to say wrong, right? It used to say not correct. It used to talk about right and wrong. Now it talks about clearly erroneous, which you have to agree, don't you, is a higher standard. That's correct, and there's no debate that clearly erroneous is the standard that adjudicators need to apply. But the debate in this case centers around whether adjudicators can look at a doctor's opinion and determine that it is equivalent to defining it clearly erroneous or whether the doctor specifically has to use the words clearly erroneous. Well, what do you think? When I say I think that's in error, suppose that was all I said, that was the only sentence I gave you. I think that opinion is in error. Do you think that is meeting the standard of clearly erroneous? Or do you think that's meeting the standard of not correct? If those words were used in isolation, it really is a factual determination that the board must make in this case. Yeah, but say you're the board. I'm asking you. What do you think? In error, not correct. That alone is probably not sufficient to establish clearly erroneous. I'm there too. So what else about the letter do you think, because those are the words used in the letter, so what else is it about the letter that you think helps make it meet that higher burden of clearly erroneous? Well, I'm not even sure that this court has jurisdiction to review that issue because that was a factual finding on the board. The board made a factual determination. Why don't you answer the question? Assume we do. Okay. Well, if you look at Dr. Durand's 1972 opinion, he looks at the history of a patient coming into their facility and he makes multiple observations. Well, hold on. When you say he makes observations, he never actually saw this patient ever, right? This letter was based on his review of a file, but I believe that the record says that he never ever even laid eyes on the patient. I don't know. That's correct. There's no evidence that he specifically diagnosed the patient. I just want to make sure I'm understanding the facts. If I've misremembered it, you correct me. He does report that he was admitted twice to his service, and he is the chief of the psychiatry service at the St. Louis Hospital. These are all facts, right? We don't have any authority to look into factual distinctions. As a matter of fact, the Court of Veterans Claims here has made a factual determination. It's not for us to say whether their factual determination is right or wrong, right? They have said this doctor, as a matter of fact, found clear error. That's correct, Your Honor. In fact, the only legal question before the Court is whether the doctors are required to use the magic words clearly erroneous in their diagnoses. It is our position and the VA's long-held position that they are not required to use those specific magic words. We can't apply the lot of the facts and get a different result. That's correct. Because we think the doctor should have seen the patient or something else.  That's correct, Your Honor. That's what I kind of thought. So you're riding two horses today. You told Judge Moore that you agree that wrong is not the same as clear error. That's what it says, and you're agreeing with Judge Rader that we can't get into it. Well, I was answering her question as directed that, you know, despite the fact that I was not waiving my objections that you all cannot get into the issue, that is not an issue before the Court. But hypothetically... But whether wrong is the same as clearly erroneous is not a question of fact. It's a question of law. So I would like an answer to the question. Well, whether there is... You mean in this specific situation or generally? Generally... We're talking about this case. This case. Then in this case, I would say Dr. Duran's opinion was equivalent to a clearly erroneous finding. Yeah, why? Because... You told Judge Moore you didn't. Well, she... I'm sorry. I believe her question was that whether he just used the words in error was sufficient to... was equivalent to a finding of not correct or was equivalent to a finding of clearly erroneous. Hopefully that was her question. And I said if he had only used the words in error, that was closer to a not correct determination. However, if you look at the opinion as a whole, as the Board did and as the Court did, and they made a factual determination that the opinion as a whole was equivalent to a finding of clearly erroneous. Yes. And also, it's important to note that this regulation falls under the section entitled adjudication. So it provides instructions to adjudicators, not to the VA medical doctors who frequently have never even seen these regulations. And additionally, just like I said before, this is a long-standing interpretation of the VA. They've never required doctors to specifically use the magic words clearly erroneous. If there are no further questions, we respectfully ask the Court to affirm the decision of the Veterans Court. Mr. Wedemeyer. Thank you, Your Honor. Judge Moore asked about Dr. Durand's opinion, which is at page 22 in the appendix. The content of his opinion exemplifies the dangers involved in allowing an opinion that does not contain the clear error certification to be the basis for severing lawfully awarded benefits. Dr. Durand is the chief of the psychiatry service at the San Juan VA Medical Center. It's clear from the first paragraph of his opinion that he's only referring to records of Mr. Andino's treatment at that facility. The doctor's opinion talks about manipulative behavior, referring to something in a 1971 report. What relevance would that have if we were to get to the facts, which we can't? What relevance would the doctor's reference of manipulative behavior? Yes, if we are looking at facts, which of course we can't, what would that be relevant to show? Not being a physician, I can't comment on the medical opinion of Dr. Durand. So you don't want to talk about the facts either? We don't believe the facts are dispositive in this case. It's purely legal questions. I'm bringing up Dr. Durand's opinion because it was referenced, I believe by opposing counsel, that he reviewed all of the records. He did not review all of the records. He reviewed the records of treatment at his facility. And that's significant because the diagnosis in this case on which service connection was predicated occurred at a different hospital subsequent to his discharge from the hospital where Dr. Durand works. And if you look at the four corners of his opinion, he doesn't reference those records at all. He finds that the diagnosis made by that hospital was in error, but in explaining why, he refers to records that are over a year old from treatment at only his facility. And this kind of inadequate, incomplete analysis further reinforces why the regulation should be applied as written. If the doctor does not say that the original diagnosis was clearly erroneous, then you have an adjudicator with no medical training looking at this and trying to figure out what it means. As I said a moment ago, I'm not a doctor. Most adjudicators, if not all, are not doctors. If the doctor does not say the original diagnosis was clearly erroneous, I invite the court's attention to Dr. Durand's supporting analysis prior to his ultimate conclusion. There's no way to equate this to a clear error finding, even if the regulation permitted such a finding to be made by someone other than a doctor. Now, the additional misinterpretation by the court in this case was with respect to what constitutes a change in diagnosis. Our position is that only the physician who renders a diagnosis can change it. Any diagnosis subsequent by a different physician is just that, a subsequent conflicting diagnosis. And absent the original physician saying, I've changed my mind, what I said before was wrong, you can never trigger a severance action under this part of the regulation because you do not even have a change in diagnosis. So even if the court were to disagree with our interpretation of the requirement, unambiguous requirement for a clear error certification, then Veterans Court nevertheless misinterpreted the regulation by allowing a diagnosis by a different physician to constitute a change in the original doctor's diagnosis. And that would equally provide a basis for this court to vacate and remand so Veterans Court could correctly apply the right to the facts of the case. And if there are no other questions, I will waive the rest of my time. Thank you. Thank you very much. The case is submitted.